# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALLIED WORLD SPECIALTY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY, a Delaware corporation; ALLIED WORLD INSURANCE COMPANY, a Delaware corporation,

Plaintiffs,

v.

JND THOMAS COMPANY, INC., a California corporation; DENNIS A. THOMAS, an individual; JULIE THOMAS, an individual,

Defendants.

_______________________________________/

Case No. 1:15-cv-01498-DAD-SKO

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT BE GRANTED**

(Doc. No. 13)

**OBJECTIONS DUE: 21 DAYS**

## I. INTRODUCTION

On November 17, 2015, Plaintiffs Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Darwin") and Allied World Insurance Company ("Allied") (collectively, "Plaintiffs") filed an application for default judgment against Defendants JND Thomas Company, Inc. ("JND"), Dennis Thomas, and Julie Thomas (collectively, "Defendants"). (Doc. 13.) No opposition to Plaintiffs' application for default judgment was filed.

The Court reviewed Plaintiffs' application and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Local Rule 230(g).[1]

For the reasons set forth below, the undersigned RECOMMENDS that Plaintiffs' application for default judgment be GRANTED against Defendants in the amount of $1,000,000.

## II. FACTUAL BACKGROUND

Plaintiffs filed a complaint on October 10, 2015, stating claims for breach of contract, declaratory relief, quia timet,[2] and specific performance. (Doc. 1.) The complaint alleges the Court has diversity jurisdiction as Plaintiffs are corporations formed under the laws of Delaware, with their principal places of business in Massachusetts; Defendant JND is an corporation formed under the laws of California with its principal place of business in Riverdale, California; Dennis and Julie Thomas are both individuals residing within the state of California; and the amount in controversy exceeds $75,000. The complaint also alleges venue is proper in the Eastern District of California because Defendants Dennis and Julie Thomas reside in Kings County, and Defendant JND has its principal place of business in Fresno County. 28 U.S.C. § 1391(b)(1).

Plaintiffs are surety that issue contract surety bonds and other lines of insurance. (Doc. 1, ¶ 5.) On November 14, 2013, Defendants entered into a General Indemnity Agreement ("GIA") in favor of Plaintiffs as sureties who agreed to issue performance and payment bonds to JND in connection with construction work on five projects ("Project Bonds"):

1. Principal: JND Thomas Company, Inc.
   Obligee: Carothers Construction, Inc.
   Bond No.: D00000785 ($1,500,000)
   Project: Construct Shopping Center, Ft. Gordon, GA
   Surety: Darwin National Assurance Company

2. Principal: JND Thomas Company, Inc.
   Obligee: Cadell Construction Co. (DE) LLC

[1] Specific to default judgment, a hearing on the issue of damages is not required as long as the court finds there is a basis for the damages specified. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (no hearing necessary when documents show judgment amount based on a definite figure); *see also* Fed. R. Civ. P. 55(b)(2) (the district court has the discretion to conduct or refuse a hearing on default judgment).

[2] "Quia timet is the right of a surety to demand that the principal place the surety in funds when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." 74 Am. Jur. 2d, Suretyship § 123 (West 2015).

Bond No.: D00000799 ($2,575,000)
Project: Unmanned Aerial Vehicle Complex, Ft. Stewart, GA
Surety: Darwin National Assurance Company

3. Principal: JND Thomas Company, Inc.
Obligee: Cadell Construction Co. (DE) LLC
Bond No.: D00000800 ($1,388,000)
Project: 1030-0005-SC, Ft. Stewart, GA Digital
Surety: Darwin National Assurance Company

4. Principal: JND Thomas Company, Inc.
Obligee: OHL USA, Inc.
Bond No.: S001-0883 ($5,000,000)
Project: Machado Lake Ecosystem Rehabilitation Phase 2, Los Angeles, CA
Surety: Allied World Insurance Company

5. Principal: JND Thomas Company, Inc.
Obligee: Monroe County Board of County Commissioner
Bond No.: S001-0871 ($1,839,905)
Project: Organic Removal, Water Quality Improvement
Surety: Darwin National Assurance Company

Defendants signed the GIA and agreed to indemnify Plaintiffs for any losses or expenses incurred from the Project Bonds. (Doc. 13-2, p. 9.) Among others provisions, Defendants agreed to the following obligations in the GIA:

> 3.2 INDEMNITY – at all times jointly and severally to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon of such due Date.
>
> . . .
>
> [3.3](a) to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to the Surety. Further, if an event of default (as defined in this Agreement below) has occurred, the Surety will be entitled to demand that the Indemnitors place with surety funds equal to the aggregate penal sum of all then-outstanding Bonds, as such sum is determined by the Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds). (b) If indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, Indemnitors will pay Interest on such overdue amount from the Due Date up to the date of actual payment to the Surety . . . .

(Doc. 1, Exhibit A.)

After issuing the Project Bonds, Plaintiffs received claims under the Project Bonds from JND's subcontractors and suppliers seeking payment for labor and materials supplied to the Projects.  Pursuant to their obligations, Plaintiffs allege they commenced an investigation of these claims and, as of the date of the complaint, they have paid claims totaling $192,791.63.  (Doc. 1, ¶ 14.)  In support of Plaintiffs' motion, the declaration of James Keating, Assistant Vice President and counsel for Plaintiffs, was filed.  (Doc. 13-2.)  Mr. Keating states that Plaintiffs have incurred $309,791.63 in losses and expenses in connection with the Project Bonds, which includes payment for claims as well as losses in the form of attorneys' and consultants' fees.  (Doc. 13-2, Keating Decl., ¶ 16.)  Also, Bibler Masonry Contractors, Inc., one of JND's subcontractors and suppliers, recently filed an action in Georgia against Darwin on the Bonds seeking over $117,000.  (Doc. 1, ¶ 16.)  Based upon their investigation of the JND projects, Plaintiffs anticipate being exposed to further payment and performance bond losses, including on the two projects at Ft. Stewart; this may include reimbursement to the obligee for costs paid on JND's behalf to a concrete supplier for more than $500,000.  (Doc. 1, ¶¶ 16-17.)

On September 21, 2015, pursuant to the terms of the GIA, Plaintiffs sent a letter to Defendants demanding they deposit $1,000,000 in cash collateral with Plaintiffs to cover actual and anticipated losses on the Bonds.  (Doc. 1, ¶ 19; Doc. 13-2, p. 67-68.)   Plaintiffs allege Defendants failed to comply with the demand or otherwise fulfill their obligations as set forth under the GIA.

Plaintiffs' complaint alleges claims for (1) breach of contract (the GIA) against all Defendants for failure to deposit collateral in any amount with Plaintiffs or indemnify Plaintiffs for their losses; (2) declaratory relief that (a) Defendants are obligated to reimburse Allied and Darwin for the amounts they have incurred and will continue to incur to satisfy JND's obligations on the bonds, including attorneys' fees, costs, and expenses; and (b) Defendants are obligated to deposit collateral in an amount as determined by Plaintiffs to discharge any loss or anticipated loss; (3) quia timet against all Defendants preventing them from transferring assets absent further order of the Court; and (4) specific performance of the terms of the GIA.

## III. SERVICE OF PROCESS

On October 8, 2015, Dennis Thomas was personally served with the summons and complaint as the agent for service of process for JND; Dennis Thomas himself was personally served with the summons and complaint on October 8, 2015; and Julie Thomas was personally served with the summons and complaint on October 8, 2015. (Docs. 6, 7, 8.) Plaintiffs requested entries of default against all Defendants on November 9, 2015 (Doc. 9), and each Defendant's default was entered by the Clerk of the Court on November 12, 2015 (Docs. 10-12). Personal service on Defendants meets the requirements of Federal Rule of Civil Procedure 4, and service of process was proper.

## IV. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are

legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B. Relief Sought in Application for Default Judgment**

Based on the claims pled in the complaint, Plaintiffs seek a judgment in the amount of $1,000,000 which is comprised of $309,791.63, the total amount of paid losses and fees, and $690,208.37, the amount of collateral demanded minus incurred losses and fees. Plaintiffs' motion for default judgment does not address each of the claims pled in the complaint and instead focuses on the monetary relief sought. Plaintiffs' request for monetary relief, however, is awardable based on Plaintiffs' claims for breach of contract and for specific performance seeking enforcement of the security collateral provision in the GIA.[3]

**C. The *Eitel* Factors Favor Entry of Default Judgment**

**1. Possibility of Prejudice to Plaintiffs**

The first *Eitel* factor considers whether Plaintiffs would suffer prejudice if default is not entered. If Plaintiffs' application for default judgment were denied, it would leave Plaintiffs without a remedy because Defendants have refused to participate in the litigation. Therefore, Plaintiffs would be prejudiced if the Court were to deny their application for default judgment. This factor weighs in favor of default judgment. *See Suretec Ins. Co. v. Orchard Hills Estates, LLC*, No. CIV S-09-0110 LKK EFB, 2010 WL 4366205, *5 (E.D. Cal. Oct. 27, 2010); *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment).

**2. Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint**

The allegations of Plaintiffs' complaint and the evidence filed in support of the motion for default judgment establish that Defendants breached the indemnity agreement (the GIA) with

---

[3] Plaintiffs do not address their claims for declaratory relief or quia timet in their motion for default judgment, but no relief pursuant to those claims is sought; as such, those claims are not addressed.

Plaintiffs. To establish a claim for breach of contract, Plaintiffs must allege (1) a contract, (2) Plaintiffs' performance or excuse for nonperformance, (3) Defendants' breach, and (4) damage to Plaintiffs. *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570). Under California law, a surety is not required to bring suit or obtain judgment establishing liability of the principal under surety bonds to be entitled to reimbursement under an indemnity agreement or to enforce the indemnity agreement after a breach. *Gen. Ins. Co. of Am. v. Singleton*, 41 Cal. App. 3d 439, 443-44.

The GIA is attached to Plaintiffs' complaint and to Mr. Keating's Declaration filed in support of Plaintiffs' motion for default judgment. (Docs. 1, 13-2.) Under the GIA, JND is the Principal, Defendants collectively are the Indemnitors, and Plaintiffs are the Surety. (Doc. 13-2.) The GIA sets forth the obligations of the Indemnitors which include indemnification of Plaintiffs as surety for any losses associated with the Project Bonds. The GIA also contains a collateral security provision:

> [3.3](a) to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to the Surety. Further, if an event of default (as defined in this Agreement below) has occurred, the Surety will be entitled to demand that the Indemnitors place with surety funds equal to the aggregate penal sum of all then-outstanding Bonds, as such sum is determined by the Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds). (b) If indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, Indemnitors will pay Interest on such overdue amount from the Due Date up to the date of actual payment to the Surety . . . .

(Doc. 1, Exhibit A.)

Plaintiffs allege Defendants have breached the GIA by failing to reimburse Plaintiffs for payment made to JND's creditors under the Project Bonds and for failing to pay the cash collateral demanded by Plaintiffs to cover anticipated losses on the Project Bonds. (Doc. 1, ¶¶ 14-19.) Plaintiffs also allege they have performed their obligations under the GIA, but as a result of Defendants' breach, Plaintiffs have been monetarily damaged. This is sufficient to state a claim for breach of the GIA.

Plaintiffs also allege a claim for specific performance of the GIA's collateral security provision. When a surety agreement contains a collateral security provision, the surety is generally entitled to specific performance of the collateral security provision, regardless whether it has actually incurred a loss or only anticipates a loss:

> A collateral security provision provides that once a surety . . . receives a demand on its bond, the indemnitor must provide the surety with funds which the surety is to hold in reserve. If the claim on the bond must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds to the indemnitor. Sureties are ordinarily entitled to specific performance of collateral security clauses.

*Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (applying California law). Pursuant to section 3.3 of the GIA, Plaintiffs issued a demand letter on September 21, 2015, requiring Defendants to deposit with Plaintiffs $1,000,000 as cash collateral to cover Plaintiffs' actual and anticipated losses under the Project Bonds, but Defendants failed to respond to the letter or deposit the collateral. Based on these allegations, Plaintiffs have adequately pled a claim for specific performance of section 3.3 of the GIA.

In sum, Plaintiffs' claims for breach of contract and specific performance are adequately pled, which weighs in favor of awarding default judgment.

**3. The Sum of Money at Stake in the Action**

Under this *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d 1177. Although the amount Plaintiffs seek is relatively large – $1,000,000 – Defendants agreed to indemnify Plaintiffs for the fees and expenses incurred on the Project Bonds. The Project Bonds issued were each in excess of $1,000,000, thus damages of $1,000,000 was within the contemplation of the parties under the terms of the GIA.[4] (*See* Doc. 13-2, pp. 34, 47, 53, 62, and 64.)

[4] Performance Bond No. S001-0871 was issued in the amount of $1,839,905.00 (Doc. 13-2, p. 53); Payment Bond No. D00000785 was issued in the amount of $1,500,000.00 (Doc. 13-2, p. 34); Performance Bond No. D00000800 was issued in the amount of $1,388,000.00 (Doc. 13-2, p. 47); and Performance Bond No. S001-0883 was issued in the amount of $5,000,000.00 (Doc. 13-2, p. 64); and Performance Bond No. D00000799 was issued in the amount of $2,575,000.00 (Doc. 13-2, p. 41). The payment and performance bonds for which Defendants agreed to indemnify Plaintiffs totaled $12,302,905.00. In that context, the $1,000,000 security collateral Plaintiffs demanded under the GIA was well within the contemplation of the parties at the time the bonds were issued.

Moreover, the amount of damages is capable of ascertainment from definite figures contained in the declaration of Amanda L. Marutzky, Esq., James Keating, Assistant Vice President and counsel for Plaintiffs, and the supporting materials attached thereto. (Docs. 13-1, 13-2.)[5]

**4. The Possibility of a Dispute Concerning the Material Facts is Minimal**

The court may presume the truth of well-pleaded facts in the complaint (with the exception of damages) following the Clerk's entry of default. As a result, there is a very small likelihood that any genuine issue of material facts exists. *See e.g., Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor favors default judgment.

**5. No Evidence that Default is Due to Excusable Neglect**

Defendants did not respond to Plaintiffs' demand letter and have not made an appearance in this action, despite being properly served. Defendants were also served with the pending motion for default judgment. (Doc. 13, p. 7.) Additionally, Plaintiffs' counsel emailed Defendants' counsel informing counsel of the entry of default. (Doc. 13-1, p. 21, Marutzky Decl., Exh. G.) This reflects Defendants have voluntarily elected not to defend themselves in this action; thus default was not entered as a result of excusable neglect. This factor weighs in favor of default judgment.

**6. Policy Favoring Decisions on the Merits is Not Dispositive**

This factor weighs against entry of default judgment in every case, but this policy factor is not dispositive. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Although a decision on the merits is preferable, this policy factor alone does not preclude the entry of default judgment.

---

[5] While the total collateral demanded by Plaintiffs is based on an estimation of expenses and losses under the Project Bonds, the GIA specifies the collateral demanded is to be determined by the Surety in its discretion. The complaint indicates the cash collateral demanded is based on approximately $245,471.32 that remains pending in bond payment claims, the suit brought by Bibler Masonry Contractors, Inc. against Darwin that seeks in excess of $117,000 under a Project Bond, and Plaintiffs' anticipation that it will be exposed to another payment of $500,000 from two Project Bonds at Ft. Stewart. (Doc. 1, ¶¶ 14-17.) As noted above, collateral security provisions such as this within indemnification agreements are routinely subject to specific performance. *Safeco Ins. Co. of Am.*, 739 F.2d at 433.

## V.     CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiffs' application for default judgment (Doc. 13) be GRANTED and judgment be entered in favor of Plaintiffs and against Defendants as follows:

1. Judgment in the total amount of $1,000,000.00 in money damages be paid by Defendants to Plaintiffs for:

    (a)  $309,791.63 for payments made to subcontractors and suppliers related to claims paid on bonds issued by Plaintiffs on behalf of JND Thomas Company, Inc. ("JND"), payments to consultants' incurred in the investigation of claims against the surety bonds, and attorney's fees and expenses in the investigation, analysis, and enforcement of Plaintiffs' rights under its surety bonds;

    (b)  $690,208.37 as the total amount of collateral demanded minus the above incurred losses referenced in (a); and

2. Simple interest that shall accrue as of the date of entry of judgment against Defendants at the applicable Federal rate pursuant to 28 U.S.C. § 1961.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  **December 29, 2015**                    **/s/ Sheila K. Oberto**
                                       UNITED STATES MAGISTRATE JUDGE